IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 12-cv-03106-PAB-CBS

TERRINA GALLEGOS,

    Plaintiff,

v.

ROCKY MOUNTAIN CHIROPRACTIC CORPORATION,
PREMIERCARE INJURY SERVICES, LLC, and
UNITED STATES DEPARTMENT OF THE TREASURY, INTERNAL REVENUE SERVICE,

    Defendants.
_____

**ORDER**
_____

This matter is before the Court on (1) United States' Motion for Summary Judgment [Docket No. 40] filed by defendant United States Department of the Treasury, Internal Revenue Service ("IRS"); (2) Defendant Rocky Mountain Chiropractic and PremierCare Injury Services Motion for Summary Judgment [Docket No. 41] filed by defendants PremierCare Injury Services, LLC ("PremierCare") and Rocky Mountain Chiropractic Corporation ("RMCC"); and (3) the Motion for Attorney Fees and Costs and to Deposit Funds [Docket No. 42] filed by The Sawaya Law Firm ("Sawaya"), counsel for plaintiff Terrina Gallegos. Plaintiff filed this interpleader action due to claims by defendants to (a) the proceeds of a settlement agreement and (b) insurance payments plaintiff received as a result of an automobile accident.

## I. BACKGROUND

The undisputed facts are as follows. On December 29, 2008, the IRS assessed a liability of $16,863 against plaintiff Terrina Gallegos for failing to pay income and FICA taxes for the tax period ending September 30, 2007. Docket No. 40 at 2, ¶ 1; Docket No. 46 at 2, ¶ 1; see 26 U.S.C. § 6672. On February 3, 2009, the IRS recorded a Notice of Federal Tax Lien with the Secretary of State of Colorado. Docket No. 40 at 2, ¶ 2; Docket No. 46 at 2, ¶ 2.

On June 22, 2009, Ms. Gallegos was injured in a motor vehicle accident and incurred medical debts to PremierCare and RMCC. Docket No. 40 at 2, ¶ 3; Docket No. 46 at 2, ¶ 3. Ms. Gallegos filed a tort claim against the other driver and, on April 15, 2010, reached a $15,000 settlement with GEICO Insurance Company ("GEICO"), the other driver's insurer. Docket No. 40 at 2-3, ¶ 4; Docket No. 46 at 2, ¶ 4. GEICO subsequently paid $9,820.43 to the IRS and deposited $5,179.57 in Sawaya's trust account. Docket No. 40 at 3, ¶¶ 6-7; Docket No. 46 at 2, ¶¶ 6-7.

At the time of the accident, Ms. Gallegos had an automobile insurance policy with Safeco Insurance Company of America ("Safeco"). Docket No. 40 at 3, ¶ 5; Docket No. 46 at 2, ¶ 5. Ms. Gallegos' Safeco policy provides that:

> An **insured** may assign, in writing, payments of expenses for services provided to the **insured** that are covered under Part **B** of this policy to . . . [a] licensed hospital or other licensed health care provider. . . . If an **insured** assigns such payments, we will pay expenses for services covered under Part **B** directly to the licensed hospital or other licensed health care provider.

Docket No. 40-6 at 11 (emphasis in original). On June 24, 2009, two days after the automobile accident, Ms. Gallegos executed an assignment of "the proceeds of any

2

settlement, claim, judgment or verdict which results from said accident" in favor of Dr. James M. Farrell of RMCC.  Docket No. 46-1 at 3.  The assignment directs Ms. Gallegos' attorney or insurance adjuster "to pay directly to Dr. James M. Farrell such sums as may be due and owing him for service rendered me, and to withhold such sums from such settlement, claim, judgment, or verdict as may be necessary to protect Dr. James M. Farrell adequately."  *Id*.

On June 14, 2010, Safeco sent a check for $5,000 to Sawaya listing both Ms. Gallegos and Sawaya as payees.  Docket No. 40-8 at 2.  Sawaya is currently holding both the Safeco check and the $5,179.57 from GEICO in its trust account.  Docket No. 40 at 3, ¶ 7; Docket No. 41 at 2, ¶ 4; Docket No. 43 at 2, ¶ 4; Docket No. 46 at 2, ¶ 7.

On October 29, 2012, Ms. Gallegos brought this interpleader action in the District Court for the City and County of Denver, Colorado, regarding the $5,000 and $5,179.57 received in settlement of her injury claims and which are being held in her attorney's trust account.  In her complaint, Ms. Gallegos requests, in part, that the court (1) order defendants to assert their claims, (2) prohibit defendants from instituting other proceedings against Ms. Gallegos until this action is resolved, and (3) declare the amounts to be paid to each defendant.  Docket No. 1-3 at 4, ¶¶ III(a)-(c).  On November 28, 2012, the IRS removed the case to this Court.  Docket No. 1 at 2.

Defendants move for summary judgment.  Docket Nos. 40 and 41.  The IRS, PremierCare, and RMCC maintain claims with respect to the $5,000 being held by Sawaya; neither Ms. Gallegos nor Sawaya has made a claim to this sum.  Docket No. 40 at 3, ¶ 8; Docket No. 41 at 2, ¶ 3; Docket No. 43 at 2, ¶ 3; Docket No. 46 at 2, ¶ 8. The IRS argues that its claim to the $5,000 has priority over the claims of RMCC and

PremierCare. Docket No. 40. RMCC and PremierCare argue that the insurance payments are not plaintiff's property under federal law and thus that the IRS does not have a priority claim. Docket No. 41. Ms. Gallegos makes a claim for the $5,179.57 remaining from the GEICO settlement to cover Sawaya's attorney fees and costs. Docket No. 42. The motion for attorney's fees is unopposed.

## II. ANALYSIS

The Federal Tax Lien Act of 1966 ("FTLA") provides that "[i]f any person liable to pay any tax neglects or refuses to pay the same after demand, the amount . . . shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." 26 U.S.C. § 6321. This language "is broad and reveals on its face that Congress meant to reach every interest in property that a taxpayer might have." *United States v. Nat'l Bank of Commerce*, 472 U.S. 713, 719-20 (1985). "[T]he lien imposed by section 6321 shall arise at the time the assessment is made and shall continue until the liability for the amount so assessed . . . is satisfied or becomes unenforceable by reason of lapse of time." 26 U.S.C. § 6322. Excepting the interests enumerated in 26 U.S.C. § 6323, a federal tax lien has priority over all competing liens that were not yet choate at the time the government perfected its lien. *General Star Indem. Co. v. Custom Editions Upholstery Corp.*, 940 F. Supp. 645, 650 (S.D.N.Y. 1996). A lien is "choate" if the identity of the lienor, the property subject to the lien, and the amount of the lien are known and established. *Id*. (citing *Don King Prods. Inc. v. Thomas*, 945 F.2d 529, 533 (2d Cir. 1991)).

To determine whether a particular asset is "property" for the purposes of § 6321,

courts look first to state law to determine the nature of the rights that the debtor has in the asset. *Drye v. United States*, 528 U.S. 49, 58 (1999). Courts then turn to Federal law to determine whether the type of interest at stake is subject to the tax lien. *Id*. Although Federal law does not create property rights, it does define the meaning and scope of the term "property" for the purpose of § 6321. *See United States v. Bess*, 357 U.S. 51, 55 (1958) (the FTLA "creates no property rights but merely attaches consequences, federally defined, to rights created under state law"). Accordingly, the Court will begin by considering the nature of medical payments coverage under Colorado law.

### A.  Medical Payments Coverage Under Colorado Law

Colorado law provides that an automobile insurance policy "shall allow, but not require, an insured under the policy to assign, in writing, payments due under medical payments coverage of the policy to a licensed hospital or other licensed health care provider . . . for services provided to the insured that are covered under the policy." Colo. Rev. Stat. § 10-4-634(1).  "Assignment is the voluntary transfer of some right or interest to another person." *State Farm Fire & Cas. Co. v. Weiss*, 194 P.3d 1063, 1067 (Colo. App. 2008).  If a patient assigns her right to payment to a healthcare provider, "[t]he insurer shall honor such assignment and make payment of covered benefits directly to such licensed hospital or other licensed health care provider." Colo. Rev. Stat. § 10-4-634(2).  "If the insurer fails to honor such assignment but instead makes payment to the insured, and if the insured fails to timely pay an amount equivalent to such payment to the. . . health care provider, then the insurer shall be liable for such

5

payment directly to the . . . health care provider." *Id*. In defining "medical payments coverage," the statute provides that, "[i]f a policy contains medical payments coverage, medical payments benefits shall be paid to persons providing medically necessary and accident-related trauma care or medical care." Colo. Rev. Stat. § 10-4-635(2)(a).

In *Showpiece Homes Corp. v. Assurance Co. of Am.*, 38 P.3d 47, 57 (Colo. 2001), the Colorado Supreme Court found that the sale of an insurance policy could be classified as a sale of goods, explaining:

> In *Baker v. Young,* 798 P.2d 889, 894 (Colo. 1990), and in *Price v. Sommermeyer*, 195 Colo. 285, 288, 577 P.2d 752, 755 (1978), we held that an insured's rights under an automobile insurance policy constituted "property" for purposes of in rem jurisdiction and probate jurisdiction, respectively. The *Baker* court found that [n]either the intangible character nor the contingent nature of the right under the policy should logically prevent it from being the subject of ownership." 798 P.2d at 893; *see also In re Hamilton's Estate*, 113 Colo. 141, 148, 154 P.2d 1008, 1011 (1945) ("An insurance policy being a chose in action is a property right, often described as intangible property."); *DiMarzo*, 449 N.E.2d at 1196 ("The purchaser of an insurance policy acquires a contractual right to payment, a form of personal property.").

In *DeHerrera v. Am. Family Mut. Ins. Co.*, 219 P.3d 346, 348 (Colo. App. 2009), American Family Mutual Insurance Company ("American Family") paid $5,000 to medical providers on behalf of its insured, Gomcindo DeHerrera, following an automobile accident. Mr. DeHerrera then brought a tort claim against the at-fault driver and reached a settlement in which he agreed to indemnify the other party and her insurer against all other claims arising from the accident. *Id*. at 349. Pursuant to a subrogation clause in Mr. DeHerrera's insurance policy, American Family sought to recover from Mr. DeHerrera's settlement proceeds the $5,000 it had paid to medical providers. *Id*. The subrogation clause provided that, if American Family made

payments under the policy, it was "entitled to all the rights of recovery of the person to whom payment was made against another." *Id*. at 348.  Mr. DeHerrera argued that this language meant that American Family could not recover from him since it had made payments not to him, but to his medical providers.  *Id*. at 350.

The court rejected Mr. DeHerrera's argument, explaining that:

> payments to medical providers who provide services directly to an insured are to be treated for subrogation purposes as if the payments were made to the insured.  The insured is the direct beneficiary of those payments.  If we were to follow DeHerrera's logic, the payments to the medical providers should not be counted against the $5,000 medical coverage benefit for which he bargained.

*Id*. at 350-51; *see also Levy v. Am. Family Mut. Ins. Co.*, 293 P.3d 40, 44-48 (Colo. App. 2011) (permitting insurance company to offset amount paid to medical providers from amount of uninsured motorist coverage owed to insured to avoid double recovery and treating medical payments coverage as a benefit to the insured); *American General Life Ins. v. Stein*, 1987 WL 6438, at *1 (S.D.N.Y. Feb. 3, 1987) ("the sums American owed to Stein were to be paid to Stein and thus constitute his 'property or right to property' against which the United States can levy.").

### B.  Definition of "Property" Under 26 U.S.C. § 6321

The cases applying § 6321 do not offer a single comprehensive definition of the term "property."  Instead, they recognize a number of attributes that, in different combinations, may be sufficient to bring a particular interest within the reach of a federal tax lien.  The Supreme Court has stated that "[t]he important consideration [in this inquiry] is the breadth of the control the [taxpayer] could exercise over the property." *Drye*, 528 U.S. at 61 (quoting *Morgan v. Comm'r of Internal Revenue*, 309

7

U.S. 78, 83 (1940)).

In *Drye*, the Court held that a debtor's decision to disclaim an inheritance, which resulted in the transfer of the entire inheritance to his daughter by operation of state law, demonstrated his control over the inheritance insofar as he had "the unqualified right to receive the entire value . . . or to channel that value to his daughter. The control rein he held under state law . . . rendered the inheritance 'property.'" *Id*. at 61.

In *United States v. Craft*, 535 U.S. 274, 283 (2002), the Supreme Court focused instead on the rights of a tenant by the entirety to "use the property, to receive income produced by it, and to exclude others from it." The Court found these rights to be indicia of "a substantial degree of control over the [] property." *Id*. The Court further held that the right of unilateral alienation was not necessary to render the debtor's interest "property" subject to § 6321. *Id*. (citing *United States v. Rodgers*, 461 U.S. 677 (1983) (upholding lower court decision forcing sale of homestead to pay Federal tax lien, even though state law barred unilateral alienation of homestead and shielded homestead from reach of most creditors)); *see also Bank One Ohio Trust Co., N.A. v. United States*, 80 F.3d 173, 176 (6th Cir. 1996) ("state-law restraints on the alienation of property rights created under the state law do not affect the status of such rights as 'property' or 'rights to property' within the meaning of those terms as used in § 6321").

In *United States v. Bess*, the Court held that an individual did not have a property interest in the proceeds of an insurance policy that he had taken on his own life since he had no right to the possession or enjoyment of such proceeds in his lifetime. 357 U.S. at 55-56. The Court explained that it "would be anomalous to view as 'property'

subject to lien proceeds never within the insured's reach to enjoy." *Id*. However, the Court found that the cash surrender value of the policy was the property of the debtor because he had the right, during his lifetime, to compel payment of that amount and could borrow against or assign that right without limitation. *Id*. at 56. The Court further held that the cash surrender value was subject to a federal tax lien, notwithstanding the fact that state law barred the attachment of other liens. *Id*. at 56-57 ("state law is inoperative to prevent the attachment of liens created by federal statutes in favor of the United States").

### C.  Status of Medical Payments Coverage Under § 6321

RMCC and PremierCare argue that Ms. Gallegos' medical payments coverage is not her property under § 6321 because the coverage may only be used to pay healthcare providers and is beyond the control of Ms. Gallegos to unilaterally redirect to any other entity. Docket No. 41 at 3. In support of this argument, they claim that Colo. Rev. Stat. § 10-4-635(2)(a) requires that insurance companies pay healthcare providers directly, without channeling payments through the insured party. *Id*. The IRS disagrees, contending that, under Colorado law, insurance proceeds are the property of the policyholder. Docket No. 40 at 8-9. It further argues that Ms. Gallegos assigned the medical payments to Dr. Farrell after the tax lien had already attached to the funds and thus that the federal lien has priority. *Id*. at 9-11.

The language of the statute governing the assignment of medical payments coverage supports the IRS' contention that such coverage is the property of the insured. Specifically, the statute permits, but does not require, a policyholder to assign

medical payments due under an automobile insurance policy to a healthcare provider. *See* Colo. Rev. Stat. § 10-4-634(1).  This provision precludes the inference that RMCC and PremierCare attempt to draw from § 10-4-635(2)(a), namely, that this provision requires payments be made directly to healthcare providers.  Notably, § 10-4-635(2)(a) does not state that medical payments shall be made "directly" by the insurance company to healthcare providers.  On the contrary, the statute specifies that payments must be made directly to healthcare providers only in the event that a policyholder executes an assignment to a healthcare provider.  *See* Colo. Rev. Stat. § 10-4-634(2). Ms. Gallegos' right to unilaterally redirect or alienate her medical payments coverage is not the measure of her property interest under federal law.  *See Rodgers*, 461 U.S. 677; *Bank One Ohio Trust Co.*, 80 F.3d at 176.  This conclusion is bolstered by the Colorado cases cited above, all of which classify payments under an insurance policy as the property of the policyholder.  *See Showpiece Homes Corp.*, 38 P.3d at 57; *DeHerrera*, 219 P.3d at 348; *Levy*, 293 P.3d at 44-48.

Finally, it is well established that Ms. Gallegos' assignment of the payments to Dr. Farrell could not alter or interfere with the preexisting lien that the IRS had placed on "all property and rights to property . . . belonging to" Ms. Gallegos.  26 U.S.C. § 6321; *see Bess*, 357 U.S. at 56-57.  As there is no dispute that the IRS recorded a Notice of Federal Tax Lien in Colorado prior to the car accident that gave rise to RMCC and PremierCare's claim to medical payments coverage, *see* Docket No. 40 at 2, ¶¶ 2-3; Docket No. 46 at 2, ¶¶ 2-3, the IRS' lien has priority over those of RMCC and PremierCare.  *See* 26 U.S.C. §§ 6322, 6323; *Don King Prods.*, 945 F.2d at 533.

### D. Attorney's Fees

Plaintiff's counsel seeks attorney's fees in the amount of $4,999.95 and costs in the amount of $858.46 pursuant to a contingent fee agreement. Docket No. 42 at 3, ¶ 11; *see also* Docket No. 42-1. The IRS does not oppose the motion, *see* Docket No. 42 at 1-2, and defendants RMCC and PremierCare have not filed a response in opposition.

The sum plaintiff's counsel requests represents five hours of work at the rate of $205 per hour and 39.75 hours of work at the rate of $100 per hour. Docket No. 42-3 at 2, ¶¶ 7-8. The contingent fee agreement provides for an award of 33.333% of the gross amount of any settlement that Sawaya obtains for plaintiff in relation to a June 22, 2009 automobile accident. Docket No. 42-1 at 2-3, ¶¶ 1-4. The agreement further provides for an award of "reasonable expenses and disbursements," estimated to total $1,500. Docket No. 42-1 at 3, ¶ 6. In light of the contingent fee agreement and the settlement of the dispute over the June 2009 accident, plaintiff's counsel requests an award of $5,854.41 in attorney's fees and costs. Docket No. 42 at 3.

The cost report, affidavit from attorney Christopher R. Duggan, and case notes submitted by Sawaya indicate that the amount of fees requested is reasonable, considering the risk that Sawaya incurred in taking the case initially, the hours expended and work performed, the reasonableness of the hourly rates compared to those typically charged in the local market, and the results achieved in securing a settlement. *See* Docket Nos. 42-2, 42-3, and 42-4. This conclusion is further supported by the absence of any objection to the award on the part of defendants.

### III. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that United States' Motion for Summary Judgment [Docket No. 40] filed by defendant United States Department of the Treasury, Internal Revenue Service is GRANTED.

With regard to the IRS' request for a declaratory judgment, it is:

**ORDERED** that the IRS' tax lien has priority over the liens of the other lienholders that are party to this matter.  It is further

**ORDERED** that The Sawaya Law Firm shall deposit a check in the amount of $5,000 for the medical payments coverage in the registry of the Court.  It is further

**ORDERED** that the Clerk of Court shall issue a check to the IRS in the amount of $5,000.  It is further

**ORDERED** that Defendant Rocky Mountain Chiropractic and PremierCare Injury Services [sic] Motion for Summary Judgment [Docket No. 41] is DENIED.  It is further

**ORDERED** that the Motion for Attorney Fees and Costs and to Deposit Funds [Docket No. 42] filed by The Sawaya Law Firm is GRANTED in part.  Plaintiff is awarded $5,179.57–the proceeds remaining from plaintiff's settlement with GEICO–in attorney's fees and costs.  It is further

**ORDERED** that this case is CLOSED.

DATED February 27, 2014.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge